PEATROSS, J.
 

 1 plaintiffs, Cheryl Denise and Randy Kenly, appeal the judgment of the trial court in favor of Plaintiffs in Intervention, the Union Parish School Board (“School Board”) and Stonetrust Commercial Insurance Company (“Stonetrust”), awarding Stonetrust a credit in the amount of $79,389 against any future workers’ compensation benefits that may be owed Mrs. Kenly. The Kenlys also appeal the judge’s ruling that the credit is subject to interest at a rate of six percent per annum until the credit is exhausted. Finally, the Ken-lys challenge the constitutionality of the Workers’ Compensation Act (“WCA”) as applied to this case. For the reasons stated herein, we amend the judgment awarding the credit to Stonetrust and reduce the credit by the amount of $10,000, representing the net award for Mr. Kenly^s loss of consortium claim. We further amend the
 
 *1287
 
 ruling to delete the accrual of interest on the credit of six percent per annum. In all other respects, the judgment is affirmed; Stonetrust is entitled to a credit in the amount of $69,389.
 

 FACTS
 

 The underlying facts of this case are undisputed. Mrs. Kenly was employed by the School Board as a school bus driver. She also operated heavy equipment and a dump truck and was a manual laborer in the Kenly family contracting business. On November 1, 2006, while she was driving the school bus, an oncoming vehicle driven by Defendant Sherry Fuller crossed the center line and crashed into the bus causing Mrs. Kenly to sustain serious and permanent injuries. The Kenlys filed suit for personal injury damages against Defendants Sherry Fuller and D’Arbonne Water 12System, Inc. The matter was amicably settled for $150,000. The settlement agreement provided that a minimum of $15,000 of the total settlement was for Mr. Kenly’s loss of consortium claim and a minimum of $75,000 was for Mrs. Kenly’s pain and suffering. As to attorney fees, the Kenlys had a one-third contingency fee arrangement with their attorneys.
 

 Stonetrust is the School Board’s workers’ compensation insurance carrier. Sto-netrust had previously paid $30,690.51 in medical benefits to Mrs. Kenly. Before disbursing settlement proceeds to the Ken-lys, their attorney reimbursed Stonetrust the amount of $20,611.31 by check and a set-off retention of $10,079.20, representing what is commonly referred to as the
 
 Moody
 
 fee.
 
 [1]
 

 Stonetrust intervened in the lawsuit, and subsequently, under La. R.S. 23:1101,
 
 et seq.,
 
 filed a Motion to Determine Credit Against Future Worker’s Compensation Benefits and a supplemental motion seeking six percent interest per year from her annual loss of collateral income ($20,000 from the family contracting business income lost). In response, the Kenlys filed a motion for summary judgment urging that Stonetrust was not entitled to a credit against settlement proceeds of Mr. Kenly for his loss of consortium, from loss of income to the family contracting business or for the amount of general damages received by Mrs. Kenly for her pain and suffering. The trial judge denied the Ken-lys’ motion and awarded a credit | sin favor of Stonetrust in the amount of $79,389. The judge’s calculation was as follows:
 

 $150,000 Plaintiffs’ total settlement
 

 -$ 50,000 Attorney fees paid by Plaintiffs
 

 -$ 20,611.38 To Stonetrust as reimbursement for medical expenses previously paid ($30,611.38 — ((1/3 attorney fees of $10,000)) = $20,611.38)
 

 $ 79,389 Amount Recovered by Plaintiffs/Credit Amount to Stone-trust
 

 In his reasons for ruling, the trial judge recognized the hardship placed on the Kenlys by his ruling; however, the trial judge stated that he was bound by the pronouncement of the legislature in La. R.S. 23:1102, which provides, in pertinent part, that “the insurer receive a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by employee.” Also in his oral reasons (and later in his written reasons for denying the Kenlys’ subsequent motion for
 
 *1288
 
 rehearing and new trial), the trial judge further held that the credit was subject to interest in the amount of six percent per annum until the credit has been exhausted under La. R.S. 23:1103,
 
 infra.
 

 [2]
 

 Finally, in his reasons for ruling, the trial judge deferred to this court the issue of the constitutionality of the WCA as applied to this case. As previously mentioned, the Kenly’s motion for rehearing and for a new trial was denied and this appeal ensued.
 

 \ «DISCUSSION
 

 On appeal, the Kenlys raise seven assignments of error, which primarily concern their challenge to the trial judge’s application of the statutory credit to which Stonetrust is entitled pursuant to La. R.S. 23:1102. They allege the following manifest errors in the trial judge’s calculations:
 

 1. inclusion in the credit of Mr. Kenly’s loss of consortium portion of the settlement, Mrs. Kenly’s pain and suffering portion of the settlement and Mrs. Kenly’s non-school board income;
 

 2. the addition of the six percent per annum interest on the credit; and
 

 3. failure to reduce the credit by the attorney fees and court costs paid by the Kenlys.
 

 The Kenlys also raise on appeal the constitutionality of the WCA as applied in this case. We will first address the calculation of the credit due to Stonetrust and interest thereon.
 

 La. R.S. 23:1102 provides, in pertinent part:
 

 B.
 
 If a compromise with such third person is made by the employee or his dependents,
 
 the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or
 
 the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim
 
 and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise....
 

 (Emphasis added.)
 

 La. R.S. 23:1103(A)(1) provides:
 

 A. (1) In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102,
 
 and damages are \r,recovered,
 
 such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer
 
 *1289
 
 for compensation shall cease for such part of the compensation due, computed at
 
 six percent per annum,
 
 and shall be satisfied by such payment. The employer’s credit against its future compensation obligation shall be reduced by the amount of attorney fees and court costs paid by the employee in the third party suit.
 

 (Emphasis added.)
 

 The Louisiana Supreme Court has recently analyzed and applied the above-quoted provisions of sections 1102 and 1103 in the case of
 
 City of DeQuincy v. Henry,
 
 10-0070 (La.3/15/11), 62 So.3d 43. Explaining that the case was one of statutory interpretation,
 
 [3]
 
 the | fisupreme court held that section 1102 applies only to situations involving the settlement of a third-party tort claim, whether or not suit was filed, while section 1103 applies to those cases which proceed to trial and a judgment is rendered by judge or jury.
 
 City of DeQuincy, supra.
 
 Referencing the clear wording of the statutes, section 1102 is applicable after “either the employee or his dependent or the employer or insurer brings suit against a third person” when “a compromise with such third person is made by the employee or his dependents.” Section 1103, on the other hand, applies “[i]n the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in La. R.S. 23:1102, and damages are recovered.” In addition, the supreme court in
 
 City of DeQuincy
 
 acknowledged that “the courts of this state have applied the statutes inconsistently.” It emphasized, however, that “the plain language of the two statutes convinces us that the legislature intended, and the lower courts were correct in finding, that only La. R.S. 23:1102 applies in cases where, as here, an employer [or its insurer] has intervened in an employee’s suit, and the suit was settled prior to judgment.”
 
 Id.
 

 We find, therefore, that, under
 
 City of DeQuincy,
 
 the trial judge was correct in
 
 *1290
 
 stating that the controlling statute is La. R.S. 23:1102 because the Kenlys filed suit for damages and the case settled for $150,000; the case 17was not tried to judgment. We further agree with the trial judge that the intent of the legislature was to require that employers and their insurers receive a credit for the entire amount of any compromise or settlement, or for the entire amount of a judgment, no matter how the damages have been characterized. The supreme court expressly stated that “employers and their insurers [are to] receive a credit for the entire amount of any compromise or settlement ... no matter how the damages have been itemized or classified.”
 
 City of DeQuincy, supra.
 
 Thus, Mrs. Kenly’s separate loss (non-school board income) and Mrs. Kenly’s general damages for pain and suffering, attorney fees and court costs were correctly included in the amount of excess of benefits. No matter how characterized, the specification and itemization of damages awarded for the injured employee’s injury are included in the “entire amount” of the settlement and are subject to the employer/insurer’s credit under the statute.
 

 We do not, however, interpret
 
 City of DeQuincy, supra,
 
 as suggesting that settlement proceeds representing damages to the injured employee’s spouse for loss of consortium should be included in the “entire amount” of damages for purposes of calculating the credit to the insurance carrier. The appellate decision from the third circuit in
 
 City of DeQuincy
 
 affirmed the trial court’s reduction of the amount of the credit due to the workers’ compensation carrier by the amount of the spouse’s loss of consortium • award and future medical expenses of the injured employee.
 
 City of DeQuincy v. Henry,
 
 09-636 (La.App. 3d Cir.12/9/09), 25 So.3d 237. The supreme court reversed only that portion of the third circuit’s decision that |sexcluded the injured employee’s future medical expenses from the calculation. Furthermore, the supreme court expressly stated that it found no manifest error in the trial court’s finding that the amount of the settlement proceeds for the spouse’s loss of consortium were not to be included in the credit. We, therefore, conclude that, because the consortium portion of the settlement is owed to a party other than the injured employee and not related to the workers compensation in any way, it is not subject to inclusion in the calculation of a credit due to the workers’ compensation carrier. The credit awarded in the case
 
 sub judice,
 
 therefore, must be reduced by the net amount of Mr. Kenly’s award for loss of consortium,
 
 ie.,
 
 $10,000 ($15,000 less one-third contingent attorney fee).
 

 Specifically regarding attorney fees, section 1102' states that the attorney fees and costs paid by the employee in prosecution of the third-party claim should be subtracted from the excess of the full amount paid by such third persons. The final calculation is as follows:
 

 Plaintiffs’ total settlement: $150,000
 

 Loss of consortium award to Mr. Kenly: -$ 15,000
 

 Award subject to section 1102(B): $135,000
 

 Attorney fees paid on that amount by the Plaintiff: -$ 45,000
 

 Total Amount of benefits pursuant to section 1102(B): $ 90,000
 

 Paid to Stonetrust (reduced by $10,000 Moody fee): -$ 20,611.31
 

 Excess of benefits pursuant to section 1102(B): $ 69,388.69
 

 Following the statutory language of La. R.S. 23:1102(B) and the supreme court’s application of it in
 
 City of DeQuincy, sur-
 
 
 *1291
 

 pra,
 
 the credit due 1 sStonetrust in the case
 
 sub judice
 
 extends to the $69,388.69 amount,
 
 i.e.,
 
 the entire amount of the settlement due only to Mrs. Kenly.
 

 As to the addition of the interest on the credit under section 1103, recall that the statute provides for accrual of six percent per annum interest on the unpaid credit “[i]n the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in La. R.S. 23:1102, and damages are recovered.” La. R.S. 23:1103(A)(1). Pursuant to
 
 City of De-Quincy, supra,
 
 and the statute’s express wording, section 1103 applies only to cases tried to judgment. Since the case
 
 sub judice
 
 was settled prior to trial, section 1103 is inapplicable and it was error for the trial judge to award interest under this section. We note, as mentioned earlier in this opinion and as stated by the supreme court, that appellate courts of the state have treated sections 1102 and 1103 inconsistently, “sometimes applying section 23:1102 to third-party claims which proceeded to judgment, and at other times applying [sjection 23:1103 to third-party claims which were settled.”
 
 City of De-Quincy, supra.
 
 The inconsistency, however, has now been resolved and we are bound by the holding of the supreme court in
 
 City of DeQuincy.
 
 The ruling of the trial judge is, therefore, amended to delete the addition of the interest on the credit due to Stonetrust.
 

 Finally, the Kenlys assert that fundamental fairness dictates finding that the application of the WCA in the instant case is unconstitutional. They further urge that the humanitarian spirit of the WCA is offended by the hardship placed on the injured employee in Mrs. Kenl/s situation. We |indisagree, especially in light of our holding that section 1103 is inapplicable; hence there will be no accrual of interest on the credit due to Stonetrust.
 

 All statutory enactments are presumed to be constitutional.
 
 Moore v. RLCC Technologies, Inc.,
 
 95-2621 (La.2/28/96), 668 So.2d 1135. When interpreting statutory provisions, “if the intent of the legislature is clear, that is the end of the matter; for the courts must give effect to the unambiguously expressed intent of the legislature if its application does not lead to absurd consequences.”
 
 Moore v. Gencorp, Inc.,
 
 93-0814 (La.3/22/94), 633 So.2d 1268. Further, courts shall not inquire as to the wisdom or policy of legislation, but, rather, examine whether legislative pronouncements run afoul of constitutional protections. We are not persuaded that the WCA, applied to this case within the dictates of the clearly expressed intent of the legislature, constitutes an unconstitutional or fundamentally unfair application of the law.
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court awarding a credit in the amount of $79,389 in favor of Defendant Stonetrust Commercial Insurance Company is amended to reflect a reduction for Mr. Kenly’s loss of consortium award. The total amount of the credit is $69,389. The judgment is further amended to delete the portion of the ruling adding interest on the credit of six percent per annum until the credit is exhausted. In all other respects, the judgment is affirmed. Costs of appeal are assessed one half to Plaintiffs Cheryl Denise and Randy Kenly and one half to Defendant Stonetrust Commercial Insurance Company.
 

 AMENDED AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 .
 
 Moody v. Arabie,
 
 498 So.2d 1081 (La.1986). The
 
 Moody
 
 fee, now codified in La. R.S. 23:1103(C)(1), represents the proportionate share of an employee’s attorneys fees that is paid by the employer when the employer intervenes in the employee's third party tort suit,
 

 [2]
 

 . We note that the final written judgment of March 23, 2010, is silent as to the interest portion of the trial judge’s ruling; however, as stated, the oral reasons and subsequent written reasons following the hearing on the motion for new trial clearly impose the interest on the credit under section 1103.
 

 [3]
 

 . The supreme court in
 
 City of DeQuincy
 
 explained:
 

 The fundamental question in all cases of statutory interpretation is legislative intent. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature.
 

 Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction. In addition to the above judicial principles which are guides to determine the intent of the legislature, the legislature has enacted rules for the construction of statutes in the provisions of the revised statutes. Louisiana Revised Statutes 1:3 provides:
 

 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 

 City of DeQuincy, supra.
 
 (Internal citations omitted.)